UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA DeMOTT, ET AL.,

       Plaintiffs,

v.

UAW INTERNATIONAL UNION, ET AL.,

       Defendants.

_____/

Case No. 09-10180

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS OR FOR SUMMARY JUDGMENT [17, 19]**

Plaintiffs' complaint asserts a classic hybrid Section 301 claim alleging that Defendant General Motors Corporation ("GM")[1] violated Plaintiffs'[2] rights created in the 2003 GM/UAW National Collective Bargaining Agreement ("National CBA") and that Defendant UAW International Union ("UAW") breached its duty of fair representation by failing to enforce the National CBA. *See* § 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185. This lawsuit is Plaintiffs' second attempt to litigate their hybrid § 301 claim against GM and the UAW arising from Defendants' conclusion that Plaintiffs and other former Delphi employees had been mistakenly placed at GM's Flint Truck plant out of order and ahead of existing GM hourly employees with superior contractual rights. As a

_____

[1]Since the filing of this lawsuit, General Motors LLC ("GM") has been substituted as the real party in interest in the place and stead of Defendant General Motors Corporation. (11/16/10 Order, Doc. No. 12.)

[2]Six of the original 17 Plaintiffs have agreed to dismiss their claims with prejudice. (12/10/10 Order, Doc. No. 16.)

contractual remedy, Defendants GM and the UAW agreed to provide all of the displaced employees the option to either transfer to GM's Pontiac Truck plant or to return to Delphi. Plaintiffs' initial lawsuit, Case No. 07-12648, was dismissed without prejudice because Plaintiffs' amended complaint conclusively established that they had not alleged facts excusing them from failing to exhaust their contractual and/or intra-union remedies.  (Def. GM's Mot., Ex. 2, 12/06/07 Opin. & Order at 2.)  Plaintiffs subsequently filed this lawsuit on January 15, 2009.

This matter is now before the Court on Defendants' motions to dismiss or for summary judgment arguing that (1) Plaintiffs failed to exhaust their contractual and/or intra-union remedies before they filed this second lawsuit, and (2) Plaintiffs' § 301 claims are time-barred by the applicable six-month statute of limitations.  For the reasons stated below, Defendants' motions are GRANTED.

## I.   Facts

### A.  Plaintiffs Placement Into and Transfer From GM's Flint Truck Plant

Prior to Plaintiffs' employment with GM in late 2006 and early 2007, they were employed by Delphi in Saginaw, Michigan.  (Compl., ¶ 11.)  As a result of an agreement reached in 2006 between the UAW, GM, and Delphi, Plaintiffs were given the opportunity to terminate their employment with Delphi – which had filed a bankruptcy petition in 2005 – and become GM employees.  (*Id.* at ¶¶ 12-14.)  Specifically, on March 22, 2006, GM, Delphi and the UAW entered into a Special Attrition Program that afforded Plaintiffs an opportunity to fill openings for employment with GM.  Plaintiffs accepted the offer and were assigned by GM to its Flint Truck plant between November 2006 and January 2007.  (*Id.* at ¶¶ 2, 14.)  Once hired by GM, Plaintiffs were represented by the UAW and were entitled

2

to all benefits under the 2003 GM-UAW National CBA.  (*Id.* at ¶¶ 10, 16.)  The GM hourly employees at Flint Truck are represented by UAW Local 598 ("Local 598").

After Plaintiffs began working at GM's Flint Truck plant, several existing GM employees who had applications pending for Flint Truck claimed they had greater contractual rights to Plaintiffs' positions.  After investigating their claims, GM and the UAW jointly concluded that Plaintiffs and other former Delphi employees had been mistakenly placed at the Flint Truck plant out of order and ahead of existing GM hourly employees with superior contractual rights.  (Def. UAW's Mot., Ex. C, Koscinski Decl., ¶ 4; Def. GM Mot., Ex. 11, Koscinski 4/28/08 letter to Pl. DeMott.)  GM employees with greater rights under the National CBA were given the opportunity to displace Plaintiffs and other former-Delphi employees beginning on July 16, 2007.  In order to provide Plaintiffs and other displaced employees an opportunity to continue their GM employment, GM and the UAW agreed to provide all of the displaced employees with the option to either transfer to GM's Pontiac Truck plant or to return to Delphi.  Sixteen of the affected employees chose to return to Delphi and were placed in Delphi plants located in Flint and Saginaw, including Plaintiffs Angela DeMott, Matt Heimberger, and Christine Mendyk.[3]  (Compl., ¶ 36.)  The remainder chose to continue their employment with GM at the Pontiac Truck plant, including Plaintiffs Michelle Scott, Gerald Gottleber, Luke Grappin, Kevin Murry, Lisa Kirk, Kenneth Kurlinski, Patricia Moreau, Aaron Sandler, and Michael Smith.[4]  (Compl., ¶ 37.)

---

[3]Dawn Godi, Ashley Hilton, Christine Mendyk also fall into this group but are no longer Plaintiffs in this lawsuit.  (12/10/10 Order, Doc. No. 16.)

[4]Shelly Keathly, Diane Michelin, and Kevin Murry also fall within this group but are no longer Plaintiffs.  (12/10/10 Order, Doc. No. 16.)

3

### B. Plaintiffs' First Lawsuit

On June 21, 2007, Plaintiffs (including eight individuals not Plaintiffs in this action) filed their first lawsuit against GM, the UAW, and Local 598 alleging, inter alia, a hybrid § 301 breach of contract/breach of duty of fair representation claim as well as allegations that it was futile for Plaintiffs to exhaust their contractual and internal union remedies prior to filing their lawsuit. (Def. GM's Mot., Ex. 1, Pls.' Am. Compl.)  Defendants filed motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that dismissal was warranted because Plaintiffs had not exhausted their contractual and/or intra-union remedies prior to filing suit and could not show that grounds exist to excuse their failure to exhaust.  This Court agreed with Defendants, granted their motions to dismiss, and dismissed Plaintiffs claims without prejudice.  (12/06/07 Opin. & Order, Doc. No. 14.)

### C. National CBA's Grievance and Appeal Procedures

It is undisputed that the National CBA at issue in this case contains a grievance and arbitration procedure, that internal union appeal remedies are available under Article 33 of the UAW's Constitution, and that Article 33 of the UAW Constitution requires all members to complete the appeals process set out in that document before bringing a lawsuit. (12/06/07 Opin. & Order, Doc. No. 14 at 5 (citing portions of the 2003 GM/UAW National CBA and the UAW Constitution).)

In their Complaint in this action, Plaintiffs concede that the National CBA includes a grievance procedure for UAW members claiming that a contractual right was violated.  If not resolved at the local plant level, the grievance can be appealed to the UAW International Union for review and processing.  If the appeal is granted by the UAW's International Executive Board ("IEB"), or upon further appellate review by either the UAW's

4

Convention Appeals Committee ("CAC") or the UAW's Public Review Board ("PRB"), then the grievance is reinstated into the grievance procedure for further processing. (Compl. at ¶¶ 29-33.)

### D. Plaintiffs' Actions Following Dismissal of First Lawsuit

#### 1. Plaintiff Angela DeMott

On December 13, 2007, seven days after the Court issued its Opinion and Order dismissing Plaintiffs' First Lawsuit, Plaintiff Angela DeMott mailed a letter to Mark Hawkins, the Chairman of Local 598. (Def. GM's Mot., Ex. 5, 12/13/07 ltr.) Her letter requested that a "group grievance" be filed on behalf of DeMott and the other 22 individuals identified as plaintiffs at the time Plaintiffs' First Lawsuit was dismissed. (*Id.*) It provided the language to be included in the group grievance, listed the individuals to be included in the group grievance, and asked that DeMott be notified "by mail as to when she could appear at either the plant or the union hall to sign the grievance." (*Id.* at 1.) Only Plaintiff DeMott signed the letter. (*Id.*)

On January 25, 2008, Plaintiff DeMott sent a letter to Ron Gettelfinger, the UAW's President, asking him (1) to exercise his prerogative as International Union President and waive the "technical" requirement that Plaintiff first appeal her "group grievance" to the Local Union, (2) to order Chairperson Hawkins of Local 598 to write out her group grievance and immediately process it to the International Union, and (3) to initiate an appeal at the International Union level under Article 33 of the UAW's Constitution. Plaintiff DeMott wrote to the UAW President because 41 days had passed and she had not been contacted by anyone representing Local 598 and was thus convinced that the Local Union

5

would "not honestly process" her group grievance and was deliberately delaying action on that grievance.  (Def. GM's Mot., Ex. 7, 1/25/08 DeMott ltr to Gettelfinger.)

On January 30, 2008, Dave Curson, the Administrative Assistant to President Gettelfinger, responded to Plaintiff DeMott's letter.  He informed DeMott that Local 598 had no authority to process a grievance on her behalf because she was currently a member of Local 467 (Delphi Saginaw) and thus the UAW could not consider her January 25, 2008 attempt to perfect an appeal pursuant to Article 33 of the International Constitution.  (Def. GM's Mot., Ex. 7, 1/30/08 ltr. to DeMott.)

On February 25, 2008, DeMott sent a letter to Chad Wurtzel, the Chairman of Local 467, on behalf of herself, Dawn Godi, and Ashley Hilton only, duplicating the information contained in her December 13, 2008 letter to Local 598.  (Def. GM's Mot., Ex. 8, 2/26/08 ltr. from DeMott to Wurtzel.)  Only Plaintiff DeMott signed the letter.  (*Id.*)

On April 16, 2008, DeMott sent another letter to UAW President Gettelfinger asking that an appeal be initiated under Article 33 of the International Constitution on her behalf and on behalf of Godi, and Hilton based on "the refusal of the UAW, at the local and regional levels, and the International level, to process a grievance for us that protests GM removing us from our jobs at Flint Assembly."  (Def. GM's Mot., Ex. 9, 4/16/08 ltr. from DeMott to Gettelfinger.)  Rather than providing information in it, DeMott's letter merely referenced Plaintiffs' First Lawsuit and stated that a statement of facts supporting the grievance had previously been submitted.  (*Id.*)  DeMott did explain that although she, Godi, and Hilton were not currently GM employees, their grievance was with GM.  (*Id.*)

On April 24, 2008, Administrative Assistant Dave Curson responded to DeMott's letter informing her that her appeal could not be processed because her letter did not meet the

6

general requirements for submission of an appeal under Article 33, Section 4(a) of the UAW Constitution.  He explained that, before DeMott's request could be considered, additional information was required, including:  who refused to process a grievance on her behalf, was it Local or International Union officials, when was the request made, how and on what date was she notified of the refusal, the process or conversation in which in which her request was denied, and why she believed the Union failed to properly represent her. (Def. GM's Mot., Ex. 10, 4/24/08 ltr. to DeMott.)  The letter also informed Plaintiff DeMott that, because Article 33, Section 4(a) of the UAW Constitution requires that all appeals be signed by the member perfecting the appeal and her submission was not signed by Dawn Godi or Ashley Hilton, they would not be considered appellants in DeMott's appeal.  (*Id.*) Finally, the letter reiterated that the International Union could not proceed with DeMott's attempt to appeal until she responded with the requested information.  (*Id.*)

On April 28, 2008, Dave Koscinski, an International UAW Representative, UAW GM Department, sent a letter to DeMott that responded to DeMott's February 25th letter to Chad Wurtzel, the Chairman of Local 467.  (Def. GM's Mot., Ex. 11, 4/28/08 ltr. to DeMott.) He informed DeMott that her letter was referred to him because it raises an issue under the UAW/GM National Agreement and not any breach of contract administered by UAW Local 467.  (*Id.*)  He then informed Plaintiff that her grievance was untimely; and even if it were timely, it lacked merit.

> [Y]our complaint here is with the manner in which you were treated by General Motors in July 2007, which you were represented by UAW Local 598, Flint Truck Assembly.  If you were unhappy with the options given to you by GM at that time, you could have filed a grievance.  You chose not to do so, and it is now too late to seek relief under the National Agreement.

> More importantly, even if a grievance had been filed within the contractual time limits, it would have been without merit.  GM's decision to place you and others from the Delphi Saginaw Plant in the Flint Truck Assembly Plant was in error.  At the time you were assigned there, more senior workers were awaiting transfers to that location.   By ignoring them, GM violated the National Agreement.  When the Union discovered this, it demanded that GM correct its mistake.  As a result, GM did what it should have done all along; offer you and others positions in Pontiac and Lake Orion Assembly Plants.  The national parties also obtained an agreement from Delphi to allow you to return to the plan in Saginaw.  You were told all of this when international representatives from the GM Department came to the Flint Truck Assembly Plant in mid 2007 to explain why you would have to transfer or return to Delphi.

(*Id.*)  Finally, the letter informed Plaintiff DeMott that UAW Local 598 did not act on her December 13, 2007 letter because her grievance "has no merit."  (*Id.* at 2.)

On June 19, 2008, DeMott sent a letter to the UAW Public Review Board ("PRB"), in care of the UAW's President's Office, complaining that the International Union had refused to process her January 25, 2008 and April 16, 2008 appeals, and that the Union was thwarting her ability to file suit in federal court.  (Def. GM's Mot., Ex. 12, DeMott 6/19/08 ltr. to PRB.)  DeMott's letter asserted that all the information needed for her appeal was contained in the Complaint filed in Plaintiffs' First Lawsuit, and that her appeal was being filed on her behalf as well as on the behalf of 20 other named individuals (including Michelle Scott).  (*Id.*)  She requested a 30-day extension of time to file a detailed appellate brief.  DeMott's is the only signature on the letter.  (*Id.*)  She did not mention the April 28, 2008 letter to her from UAW Representative Dave Koscinski.  (*Id.*)

On July 15, 2008, Administrative Assistant Curson responded to DeMott's letter to the PRB.  He informed DeMott that her letter had been forwarded to the PRB, that her appeal to the PRB was premature, that the PRB did not have appellate jurisdiction until after the UAW's International Executive Board ("IEB") made a decision, and the IEB had not yet

8

made a decision on DeMott's April 16, 2008 appeal request because DeMott had not supplied the information requested in an April 24th letter. (Def. GM's Mot., Ex. 13, 7/15/08 ltr. to DeMott.)

On August 15, 2008, DeMott's counsel, Harold Dunne, wrote to the Executive Director of the UAW PRB informing the PRB that he had been retained by DeMott to represent her and her co-appellants before the PRB and that he would be delivering an appellate brief on Monday, August 18th. (Def. GM's Mot., Ex. 14, 8/15/08 ltr. from Pls.' s counsel Harold Dunne.)

On August 21, 2008, the PRB's Executive Director, Barbara Klein, responded to Attorney Dunne advising him that there was no appeal pending before the PRB on behalf of DeMott and the others. (Def. GM's Mot., Ex. 15, 8/21/08 ltr. from PRB to Dunne.) She reiterated what Administrative Assistant Curson had stated in his July 15th letter to DeMott, i.e., that her appeal to the PRB was premature because there was no decision to review from the IEB. (*Id.*) Moreover, Ms. Klein disputed Plaintiff DeMott's claim in her June 19th letter that the International Union had refused to process her appeal. Rather than refusing to process DeMott's appeal, the International Union "simply asked for additional information about the appeal" that were routine. (*Id.*) DeMott and the other appellants, however, failed to respond to the International Union's request for information. Accordingly, Ms. Klein suggested that Attorney Dunne contact Curson, Administrative Assistant to President Gettelfinger, to find out the current status of DeMott's appeal. (*Id.*)

Neither Plaintiff DeMott nor Plaintiff's counsel made any further efforts to perfect her appeal.

On January 15, 2009, Plaintiffs filed this Second Lawsuit.

9

### 2.  Plaintiff Michelle Scott

Plaintiff Michelle Scott is the only other Plaintiff who made any effort to pursue a grievance or appeal under the UAW's Constitution after Plaintiffs' First Lawsuit was dismissed for failure to exhaust on December 6, 2007.

On April 18, 2008, Plaintiff Scott sent a letter to the UAW's President's Office on her behalf and on behalf of 15 other named individuals (not including Plaintiff DeMott), advising that she and the others were filing an appeal under Article 33, Section (a) of the International Constitution based on the UAW's refusal at the local, regional, and international levels, to process a grievance that protests GM's removal of them from their jobs at the Flint Assembly Plant.  (Def. GM's Mot., Ex. 16, 4/18/08 ltr. from Scott.)  Similar to DeMott's letter, the only details provided in Scott's letter was a reference to Plaintiffs' First Lawsuit and to an earlier submission of a statement of the facts.  Scott complained that "[n]o one, including your office, will assist us in pursuing our claim of being wrongfully treated by GM."  (*Id*.)

On April 24, 2008, Administrative Assistant Curson from UAW President Gettelfinger's Office responded, informing Scott that the Office cannot proceed with her appeal until she provides more information -- the exact same information requested from DeMott -- and further informing Scott that, because the additional 15 individuals had not signed her letter, they could not be considered appellants in Scott's attempted appeal.  (Def. GM's Mot., Ex. 17, 4/24/08 ltr. to Scott.)

On June 13, 2008, Scott sent a letter to the PRB, in care of the UAW's President's Office, claiming that the UAW had refused to process her appeal and asking the PRB to consider her appeal which was brought on her behalf and on behalf of 20 other named

10

individuals.  Plaintiff DeMott was one of the listed individuals.  So were Dawn Godi and Ashley Hilton.  (Def. GM's Mot., Ex. 18, 6/13/08 ltr. to PRB.)  Scott also asked for a 30-day extension to file a detailed appellate brief.  (*Id.*)

On June 26, 2008, Administrative Assistant Curson from UAW President Gettelfinger's Office responded to Scott's letter.  Citing Article 33, Section 3(f) of the UAW Constitution, he informed Scott that, because the IEB had not yet rendered a decision on her appeal, her appeal to the PRB was premature.  He also reminded Scott that she failed to properly perfect her appeal to the International Union because she had not yet responded to or supplied the information requested in the April 24th letter to her.  (Def. GM's Mot., Ex. 19, 6/26/08 ltr. to Scott.)  Finally, he advised Scott that her letter was being forwarded to the PRB for its review.  (*Id.*)

On July 17, 2008, Barbara Klein, Executive Director of the PRB, responded to Scott's forwarded letter.  (Def. GM's Mot., Ex. 20, 7/17/08 PRB ltr. to Scott.)  Klein enclosed a copy of Article 33 of the UAW Constitution and offered to answer Scott's questions about how the appellate process works.  She reiterated Mr. Curson's explanation that, because she had not yet perfected her appeal to the International Union and there was no IEB decision for the PRB to review, her appeal to the PRB was premature.  (*Id.*)  Klein rejected Scott's statement that the International Union had refused to process her appeal.  Rather, she reminded Scott that the International Union requires and requested critical information about her appeal that Scott failed to provide.  She explained that, without that information, the International Union could not process her appeal.  (*Id.*)  Klein also reminded Scott that the UAW Constitution requires the signature of each member who wishes to be included in an appeal and instructed her on how to accomplish that task.  (*Id.*)  Finally, Klein advised

Scott that, if she wished to continue with her appeal, she "should provide the information requested in Administrative Assistant Curson's letter within 30 days of [her] receipt of [Klein's] letter."  (*Id.* at 2.)

Scott did not provide the requested information as instructed.

On January 15, 2009, Scott filed this Second Lawsuit along with the other Plaintiffs.

### E.  Plaintiffs' Second Lawsuit

Counts II and III of Plaintiffs' complaint in this action assert a classic hybrid § 301 claim alleging that Defendant GM violated Plaintiffs rights created in the 2003 GM/UAW National CBA and that Defendant UAW breached its duty of fair representation by failing to enforce that National CBA.  (Compl. ¶¶ 9-10, 16-28, 34-37.)  Count I is captioned "The Futility of Plaintiffs Exhausting their Administrative Remedies and their Internal Union Appeal Procedure," but then inconsistently alleges that Plaintiffs both did and did not exhaust.  (*Compare* Compl. ¶ 44 with ¶ 47.)  Despite the conflicting allegation in ¶ 44, the remaining allegations in Count I assert that, because GM was facing bankruptcy and Plaintiffs' grievance would be unduly delayed, any attempt to exhaust would be futile.  (*Id.* at ¶¶ 40-47.)

## II.   Standard of Review

This matter is now before the Court on Defendants' motions for dismissal, under Rule 12(b)(6), or for summary judgment, pursuant to Rule 56(c).

### A.  Rule 12(b)(6) Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states

12

a valid claim for relief.  *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996).  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).  *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).  "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009)  The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950 (internal quotation marks and citation omitted).  Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted).  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  In sum, "[t]o survive a

13

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 1949 (internal quotation marks and citation omitted).

### B. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

14

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

## III.   Analysis

Defendants' motions argue that (1) Plaintiffs failed to exhaust their contractual and/or intra-union remedies before filing this lawsuit, and (2) Plaintiffs' § 301 claims are time-barred by the applicable six-month statute of limitations.  The Court addresses Plaintiffs' failure to exhaust argument first.

### A.  Exhaustion Requirement

#### 1.  General Principles

To prevail on their hybrid § 301 claim, Plaintiffs must prove that GM breached their CBAs and that the Union breached its duty of fair representation.  *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990); *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983).  No liability attaches to any defendant unless both

15

prongs of the hybrid § 301 claim are established.  *Roeder v. Am. Postal Workers Union, AFL-CIO*, 180 F.3d 733, 737 (6th Cir. 1999).

As to the breach of contract prong, it is well-established that if a grievance procedure is included in a CBA, that process must be first exhausted before a plaintiff may file a lawsuit alleging a breach.  *Vaca v. Sipes*, 386 U.S. 171 (1967).  As to the other prong,  the law is equally well-established that a plaintiff union member must likewise exhaust all available intra-union remedies capable of activating or reactivating his or her grievance before filing a lawsuit alleging that the Union breached its duty of fair representation. *Clayton v. UAW*, 451 U.S. 679 (1981); *Monroe v. Int'l Union, UAW*, 723 F.2d 22, 24 (6th Cir. 1983).

It is undisputed that the National CBA at issue in this case contains a grievance and arbitration procedure.  (Def. GM's Mot., Ex. 21, GM/UAW National CBA dated 9/18/03, ¶¶ 28-55.)  It is likewise undisputed that internal union appeal remedies are available under Article 33 of the UAW's Constitution.  Article 33 of the UAW Constitution requires all members to complete the appeals process set out in that document before bringing a lawsuit.  (Def. UAW's Mot., Ex. D.1, UAW Constitution, Art. 33, §§ 1-5, pp. 86-96.)

As observed by the Sixth Circuit, generally in hybrid § 301 cases like this, "federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress before filing suit."  *Wagner v. General Dynamics*, 905 F.2d 126, 127 (6th Cir. 1990) (internal quotation marks and citation omitted) (emphasis in original).  "[T]his exhaustion requirement similarly applies to internal union appeals procedures provided by

16

a union constitution." *Id.* (citing *Clayton*, 451 U.S. at 696 and *Monroe*, 723 F.2d at 24). Moreover, if Plaintiffs "inexcusably failed to exhaust union appeals, the failure would bar this suit not only against the unions, but also against GMC." *Monroe*, 723 F.2d at 24 (citing *Clayton*, 451 U.S. at 692 n.20). *See also Wagner*, 905 F.2d at 127.

### 2.   Undisputed Evidence Shows Plaintiffs Failed to Exhaust

As the above-described letters establish, Plaintiffs failed to exhaust their contractual and/or intra-union appeal remedies before filing this lawsuit.  Of the eleven remaining Plaintiffs in this lawsuit, only DeMott and Scott sent a letter asking for an appeal with their signatures on it.  Despite written reminders that Article 33, § 4(a) of the UAW Constitution required that all appeals be signed by the union members seeking to pursue an appeal and instructions on how to comply with this requirement, the other Plaintiffs failed to comply with this requirement before filing this lawsuit.  (Def. GM's Mot., Ex. 20, 7/17/08 ltr. to Scott instructing that "You merely need to add a signature page to your appeal and have each of the appellants sign it.")  Thus, the claims of these nine other Plaintiffs -- Gerald Gottleber, Luke Grappin, Matt Heimberger, Alan Henning, Lisa Kirk, Kenneth Kurlinski, Patricia Moreau, Aaron Sandlin, and Michael Smith -- are dismissed because they never even attempted to exhaust their contractual and/or intra-union remedies prior to filing this lawsuit.  *See Wagner*, 905 F.2d at 127 (observing that federal labor policy requires that individual employees wishing to assert contractual grievances and/or internal union appeal procedures must attempt to use those procedures before filing suit).

Similarly, despite Plaintiffs DeMott's and Scott's attempts to exhaust their intra-union appeal remedies, the above-described letters establish that they too failed to exhaust those

remedies before filing this lawsuit.  Specifically, these Plaintiffs failed to provide the information requested by the UAW in the April 24, 2008 letters despite a warning that the IEB could not proceed with Plaintiffs' attempt to appeal until this was done.  (Def. GM's Mot., Exs. 10 and 17.)  Rather than provide the information, both DeMott and Scott went directly to the PRB with the argument that the UAW was refusing to process their appeals. (Def. GM's Mot., Exs. 12 and 18.)  The PRB wrote and informed both DeMott and Scott as well as Plaintiffs' counsel, in June, July, and August 2008, that it could not consider their appeals until the IEB made a decision and that the IEB could not make a decision until Plaintiffs supplied the information that it had requested.  (Def. GM's Mot., Exs. 13, 15, 19 and 20.)  Plaintiffs DeMott and Scott, however, failed to take any further steps to perfect their appeals.  Rather, they waited until January 15, 2009 and then filed this lawsuit. Because Plaintiffs DeMott and Scott failed to exhaust their remedies before filing suit, their hybrid § 301 claims are dismissed.

### 3.  Plaintiffs Cannot Show Futility

In *Clayton*, the Supreme Court identified that a plaintiff's failure to exhaust may be excused if the plaintiff establishes that:  (1) hostility on the part of union officials at every level of the appeal process precludes a fair hearing of the plaintiff's claim; (2) the internal appeals process is inadequate to provide complete relief or reinstatement of a grievance; or (3) exhaustion would unreasonably delay a plaintiff's ability to seek a judicial hearing on the merits of his or her claim.  *Wagner*, 905 F.2d at 128; *Monroe*, 723 F.2d at 24-25.  The burden is on the employee to come forward with evidence excusing the failure to exhaust

18

internal union remedies before filing suit.  *See Clayton*, 451 U.S. at 689, *Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1039 (6th Cir. 1989).

In an attempt to avoid their exhaustion requirement, Plaintiffs do not argue hostility on the part of union officials.  Rather, they allege in their complaint that it would have been futile for them to exhaust their contractual and intra-union remedies because GM was headed toward inevitable bankruptcy and this would force a three-year delay in the grievance/appeal process.  (Compl., ¶¶ 40-47.)  This futility argument lacks merit.

Plaintiffs fail to identify any facts supporting their allegation that any delay caused by GM's bankruptcy would result in their being unable to receive full relief.  Defendant UAW, on the other hand, presents evidence that refutes Plaintiffs' argument.  Plaintiffs filed this lawsuit on January 15, 2009.  On June 10, 2009, Defendant GM notified the Court that it had filed a bankruptcy petition [7], and an Order of Administrative Closure was entered on June 16, 2009 [8], staying the case pursuant to 11 U.S.C. § 362(a)(1).  On November 4, 2010, Plaintiffs filed a motion to lift the stay [9], and the Court granted that motion on November 8, 2010 [10].  During the 17-month period in which this case was stayed, the grievance and arbitration procedures set forth in the GM/UAW CBA continued to operate normally.  (Def. UAW's Mot., Ex. C, Koscinski Decl., ¶ 5.)  There was never any interruption with the UAW's internal appeals process with regard to grievances concerning GM employees represented by the UAW.

Plaintiffs apparently abandon the futility argument alleged in their Complaint as it is not addressed in their Response.  Rather, their Response raises two new futility arguments: (1) they should be excused from exhausting their appeals because the decisions that

resulted in their transfer to and subsequent removal from the GM Flint Truck plant might constitute "official collective bargaining policies" that are not appealable to the PRB (Pls.' Resp. at 4-5); and (2) their § 301 claim is ripe for judicial review because the memorandum of understanding ("MOU") entered into between GM, the UAW, and Delphi that resulted in their employment at GM in the first instance was approved by the bankruptcy court and thus any change in their employment can only be determined in a judicial setting (Pls.' Resp. at 5-6).

This Court first addresses Plaintiffs' argument that they could not exhaust because the PRB did not have jurisdiction over their appeal. Specifically, Plaintiffs' argue that GM's and the UAW's decisions that resulted in their transfer to and subsequent removal from the GM Flint Truck plant might be construed as "collective bargaining policies" that are precluded from review by the PRB under Article 33, § 3(f) of the UAW Constitution. This argument was previously raised and rejected in Plaintiffs' First Lawsuit. There, the Court held that:

> Plaintiffs' allegations giving rise to their § 301 claims reveal that they are not seeking to undo the National CBA because they quarrel with decisions made by the UAW during bargaining with GM. Rather, they seek to enforce the terms of the National CBA that Plaintiffs allege were breached by GM. Accordingly, . . . there are CBA and intra-union procedures that provide the relief Plaintiffs seek.

(12/06/07 Opin. & Order at 9-10.) Plaintiffs argue here that GM breached the National CBA and that the UAW breached its duty of fair representation by refusing to remedy GM's alleged contract breach. Plaintiffs do not claim that the UAW breached its duty of fair representation by agreeing in the first instance to the contractual provisions at issue here. That is the sort of claim that would not be reviewable by the PRB.

20

Moreover, even if the PRB did not have jurisdiction to consider Plaintiffs' appeal, a different internal appeals path was open to them. As this Court explained in Plaintiffs' First Lawsuit, even if Plaintiffs' dispute involved matters of bargaining policy beyond the purview of the PRB, Article 33 of the UAW Constitution permits complaints regarding bargaining policy to be appealed to another independent decision-making body -- the Convention Appeals Committee ("CAC").

> The CAC has jurisdiction to consider and decide all appeals submitted to it from any decision of the International Executive Board. The CAC is composed of members from around the country selected by lot from rank-and-file delegates to the UAW's Constitutional Convention. Thus, Plaintiffs have available process that allows them to have a hearing independent of the UAW's political hierarchy if they fail to prevail at one of the lower steps of the appeals process.

(*Id.* at 10 (internal quotes and citations to UAW Constitution omitted).) Plaintiffs' futility arguments ignore this intra-union remedy.[5]

The Court now addresses Plaintiffs' argument that they "should not be required to exhaust their contractual and intra-union remedies before seeking judicial redress since the agreement between the UAW, GM and Delphi stemmed from a court order." (Pls.'s Resp. at 5.) At the motion to dismiss hearing in Plaintiffs' First Lawsuit, they raised a similar argument that was rejected by the Court. (Def. GM's Reply, Ex. A, 12/05/07 Tr. at 11-13.) The Court now rejects Plaintiffs' current version of this argument. Plaintiffs provide no legal authority or other support for their argument. As stated above, Plaintiffs claim a breach of

---

[5]Plaintiffs' claim that Defendants' motions should be denied because they need more discovery is also rejected. The discovery they seek cannot possibly advance the futility arguments they raise here.

the 2003 GM/UAW National CBA, not a breach of the March 22, 2006 UAW/GM/Delphi MOU that was approved by the bankruptcy court.

### B. Plaintiffs' § 301 Claim is Barred by the Statute of Limitations

Defendant GM also argues that Plaintiffs' hybrid § 301 claim should be dismissed with prejudice because it is barred by the applicable statute of limitations.   Specifically, Defendant argues that Plaintiffs' claim accrued, at the latest, on June 21, 2007, because this is when they filed their First Lawsuit as thus cannot argue that they had not yet discovered the alleged breach of the National CBA.   Thus, Plaintiffs had six months from June 21, 2007 to begin the grievance process and to toll the statute of limitations which would expire on December 21, 2007.   Only Plaintiff DeMott did so -- on December 13, 2007.   Despite Plaintiff DeMott's effort to toll the statute of limitations only days before it expired, Defendant argues that the Court cannot ignore the amount of time that lapsed before she did so and the amount of time that lapsed between the UAW's last contact with Plaintiff DeMott and the time this Second Lawsuit was filed.

Plaintiffs, on the other hand, argue that the six month statute of limitations period only began to run on August 21, 2008 and had not expired on January 15, 2009 when Plaintiffs filed this Second Lawsuit.   On August 21, 2008, the UAW's PRB informed Plaintiffs' counsel Harold Dunne that the PRB could not consider an appeal from the IEB when the IEB has not yet issued a decision on Plaintiff's grievance,   rejected the assertion that the IEB had refused to process Plaintiff's appeal, pointed out that it was Plaintiff and not the UAW that was holding-up her appeal because she had not yet responded to the IEB's request for additional information necessary for the IEB to process Plaintiff's appeal, and suggested

22

that Plaintiffs' counsel contact Administrative Assistant Curson to find out the current status of Plaintiff's appeal.  (Pls.' Resp., Ex. 5, 8/21/08 ltr. to Harold Dunne.)

Defendant responds that the six month statute of limitations did not begin anew on August 21, 2008.  Rather, the hybrid § 301 claim accrued on the date Plaintiffs filed their First Lawsuit -- June 21, 2007 -- and the limitations period is tolled only while an employee diligently pursues available internal union remedies.  Because Plaintiffs failed to diligently pursue those remedies during the entire period the First Lawsuit was pending and failed to do so again after August 21, 2008, Defendant argues that Plaintiffs not only filed this Second Lawsuit before exhausting their contractual and/or intra-union remedies but also filed this Second Lawsuit after the relevant six-month statute of limitations period had expired.  This Court agrees with Defendant and thus dismisses Plaintiffs' hybrid § 301 claim with prejudice.

It is well-settled that a six-month statute of limitations applies when an employee sues his employer under a § 301 claim.  *See DelCostello*, 462 U.S. at 172, *Ryan v. Gen. Motors Corp.*, 929 F.2d 1105, 1110 (6th Cir. 1989).  "A claim under § 301 accrues when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation."  *Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 1000 (6th Cir. 1994) (internal quotation marks and citation omitted).  An employee's claim accrues against the employer and the union at the same time.  *Robinson v. Central Brass Mfg. Co.*, 987 F.2d 1235, 1239 (6th Cir. 1993).

Plaintiffs fail to provide any legal or factual support for their argument that their hybrid § 301 claim against Defendants GM and the UAW accrued later than June 21, 2007 -- the

23

date they filed their First Lawsuit -- nor can they. The Sixth Circuit has consistently rejected an argument that a plaintiff cannot both pursue his internal union remedies and also comply with the six-month statute of limitations period. In *Dunleavy v. Local 1617, United Steelworkers of Am.*, 814 F.2d 1087 (6th Cir. 1087), the court "held that the limitations period should be tolled while an employee diligently pursues his available internal union remedies." *Knighten v. Gen. Motors Corp.*, No. 07-2559, 2009 WL 332821, *5 (6th Cir. Feb. 12, 2009) (citing *Dunleavy*, 814 F.2d at 1089)). Accordingly, by invoking the doctrine of equitable tolling, a plaintiff can and must comply with both obligations. As the Sixth Circuit observed in *Knighten*, "[a]n employee wishing to bring a hybrid § 301 claim may not disregard either the limitations period or the exhaustion requirement, and compliance with one does not excuse the failure to satisfy the other." *Id.*

Plaintiffs also fail to show how tolling would operate to place their Second Lawsuit within the six-month statute of limitations period. First, the limitations period was not tolled while the First Lawsuit was pending. As the Sixth Circuit observed in *Howell v. General Motors Corp.*, 19 F. App'x 163, 166 (6th Cir. 2001), when there is a dismissal without prejudice, that action is not tolled for the time period in which it was pending. As the Sixth Circuit explained:

> It is generally accepted that a dismissal without prejudice leaves the situation the same as if the suit had never been brought, and that in the absence of a statute to the contrary a party cannot deduct from the period of the statute of limitations the time during which the action so dismissed was pending.

*Id.* (quoting *Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 27 (6th Cir. 1987)). Relevant here, the court further explained that, "when a hybrid § 301 action is dismissed for failure

24

to exhaust internal union remedies, the dismissal is without prejudice," and "[w]hile a dismissal without prejudice permits a plaintiff to refile the action, that does not mean the refiled action will necessarily be filed within the applicable statute of limitations." *Howell*, 19 F. App'x at 167.

Second, Plaintiffs cannot show that they diligently pursued their internal union remedies after August 21, 2008, and thus the months between that date and the January 15, 2009 date when they filed their Second Lawsuit are not entitled to equitable tolling. It is well-established that the statute of limitations period is equitably tolled only during the time period when the plaintiff is diligently pursuing his or her internal union remedies. *See id.* at 167-68 (citing *Dunleavy*).

Plaintiffs cannot show that they filed their Second Lawsuit within the six-month statute of limitations period. Because the six-month statute of limitations period was not tolled during Plaintiffs' First Lawsuit, it was due to expire on December 21, 2007. This Court dismissed Plaintiffs' First Lawsuit on December 6, 2007. On that date, there were 15 days left in the six-month statute of limitations period. Plaintiff DeMott was the only Plaintiff who took any action before December 21, 2007. On December 13, 2007, she began the pursuit of her internal union remedies. On that date, Plaintiff DeMott had eight days left before the six-month statute of limitations expired. More than eight days lapsed between the August 21, 2008 letter that Plaintiffs claim represents the end of their active pursuit of internal union remedies and the January 15, 2009 date when Plaintiffs filed this Second Lawsuit. "Principles of equitable toling usually dictate that when a time bar has been suspended and then begins to run again upon a later event, the time remaining on the clock is calculated

by subtracting from the full limitations period whatever time ran before the clock was stopped.")  *See id.* at 168 (quoting *United States v. Ibarra*, 502 U.S. 1, 4 n.2 (1991)). Assuming, without deciding, that all Plaintiffs can reap the benefits of Plaintiff DeMott's actions, they all suffer the same consequence.  Because Plaintiffs failed to file their hybrid § 301 claim with the six-month statute of limitations period, that claim is dismissed with prejudice.  Plaintiffs provide no legal support for a contrary conclusion.

## IV.  Conclusion

For the above-stated reasons, Defendants' motions to dismiss or for summary judgment are GRANTED.  The hybrid § 301 claim asserted in Plaintiffs' complaint is DISMISSED WITH PREJUDICE.


s/Nancy G. Edmunds_____
Nancy G. Edmunds
United States District Judge

Dated:  March 3, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 3, 2011, by electronic and/or ordinary mail.

s/Carol A. Hemeyer_____
Case Manager

26